

FILED

2012 JAN 26  PH 3: 16

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

1  Robert C. Faber (*pro hac vice pending*)
   OSTROLENK FABER LLP
2  1180 Avenue of the Americas, 7th Floor
   New York, New York 10036-8403
3  Telephone: (212) 382-0700
   Facsimile: (212) 382-0888
4  Email: rfaber@ostrolenk.com
5
   Erik D. Smithweiss, Esq.(State Bar No. 255999)
6  Heather C. Litman, Esq. (State Bar No. 155777)
   Grunfeld, Desiderio, Lebowitz,
7  Silverman & Klestadt LLP
   707 Wilshire Blvd. – Suite 4150
8  Los Angeles, California 90017
   Telephone: (213) 624-1970
9  Facsimile: (213) 624-1678
   Email: Esmithweiss@GDLSK.COM
10
11 Attorneys for Plaintiffs BEST-LOCK GROUP LIMITED,HONG KONG
   a foreign corporation, BEST-LOCK CONSTRUCTION TOYS, INC.
12 a foreign corporation, and BEST-LOCK LIMITED,HONG KONG,
   a foreign corporation
13

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17  BEST-LOCK GROUP LIMITED,HONG KONG, a foreign corporation, BEST-LOCK 18  CONSTRUCTION TOYS, INC., a Florida corporation, and BEST-LOCK 19  LIMITED,HONG KONG, a foreign corporation, 20 | Civil Action No.  **SACV12-00126 JST (MLGx)** |
| 21                  Plaintiffs, 22         v. | **COMPLAINT**  **DEMAND FOR JURY TRIAL** |
| 23  LEGO JURIS A/S, a foreign corporation,and LEGO GROUP, a 24  foreign corporation, and LEGO SYSTEMS, Inc., a Delaware 25  corporation, 26                  Defendants. 27 | |

28  / / /

1

Plaintiffs, Best-Lock Group Limited, Hong Kong; Best-Lock Construction Toys, Inc.; and Best-Lock Limited, Hong Kong (collectively, "Best-Lock"), for their complaint against the actions of the Defendant, Lego Juris A/S, respectfully allege as follows:

### INTRODUCTION

1.   Best-Lock seeks a declaratory judgment that the importation into or sale within the United States of its Best-Lock brand plastic building blocks and figures does not infringe the alleged trademark represented by U.S. Trademark Registration No. 2,273,314 (the "Lego Mark", Exhibit A hereto) registered to Defendant Lego Juris A/S ("Lego"); that Lego Juris is collaterally estopped from enforcing the Lego Mark against Best-Lock and from asserting its validity to U.S. Customs and Border Protection; that the Lego Mark is functional and therefore its registration is invalid and unenforceable against Best-Lock; that the Lego Mark is generic and therefore its registration is invalid and unenforceable against Best-Lock; that Lego's U.S. Trademark Registration No. 2,273,314 shall be cancelled; that Lego has committed fraud on the U.S. Patent and Trademark Office in obtaining and renewing its trademark registration and the registration is invalid and unenforceable; that Lego is estopped from claiming that Best-Lock has infringed the Lego Mark; and that Lego's wrongful use of U.S. Trademark Registration No. 2,273,314 constitutes unfair competition under United States law.

2.     Best-Lock further seeks a mandatory preliminary injunction requiring Lego to file consent with United States Customs and Border Protection ("CBP"), to the past and future importation and delivery to Best-Lock Construction Toys, Inc. and Best-Lock's customers and others in the United States of Best-Lock's products that have been seized or detained by CBP by reason of the alleged infringement of the Lego Mark.  CBP has continued to seize Best-Lock's toy blocks and figures despite Best-Lock's ongoing and ultimately unsuccessful efforts during the past several months to remedy this matter directly with CBP. CBP's seizure of Best-Lock's toy blocks and figures on January 6, 2012 has created this urgent circumstance as it is now evident that Best-Lock will be unable to obtain relief through CBP.

3.     Without the preliminary injunction, temporary restraining order, and declaratory judgment it requests herein, Best-Lock and its U.S. customers will continue to be irreparably harmed by Lego's improper assertion against Best-Lock of alleged trademark rights in the Lego Mark and the subsequent seizure and detention by CBP of Best-Lock's products.  Lego's conduct has resulted in and will continue to result in Best-Lock's inability to complete and deliver orders and obtain new orders for the next selling season of Best-Lock products, causing substantial injury to Best-Lock's business, reputation and goodwill, and the loss of customers and substantial revenue without adequate remedy at law.

## JURISDICTION AND VENUE

4.     This action seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201. It presents an actual case

or controversy under Article III of the United States Constitution and serves the essential purpose of clarifying and settling the legal rights at issue.

5.    This Court has subject matter jurisdiction over this matter as it involves trademark rights arising under 15 U.S.C. §§ 1051, et seq., under 28 U.S.C. § 1331, and under 28 U.S.C. § 1338, the district courts possess original jurisdiction of any civil action arising under any Act of Congress relating to trademarks.

6.    This Court has personal jurisdiction over Lego in this action and venue is proper because Lego has engaged in systematic and continuous substantial business within this district, either directly or through licensees or, alternatively, there are sufficient minimum contacts with this forum by it, and the harm caused to Best-Lock by Lego's conduct was targeted at and designed to impact Best-Lock, which is doing business in this judicial district.

## PRIOR RELATED ACTIONS

7.    On October 14, 2011, Lego A/S and Lego Systems, Inc. filed Civil Action No. 3:11-cv-1586 in the United States District Court for the District of Connecticut against Best-Lock Construction Toys, Inc. alleging copyright infringement and violation of the Connecticut Unfair Trade Practices Act.  Best-Lock Construction Toys, Inc. filed its Answer, Affirmative Defenses and Counterclaim on January 5, 2012. There is no copyright claim in the captioned action.

8.    On December 21, 2011, Best-Lock Group Limited, Best-Lock Construction Toys, Inc., and Best-Lock Limited, Hong Kong filed with

the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office Petition for Cancellation No. 92054990 to cancel the Lego Registration on the grounds of fraud in the application and renewal processes; that the Lego Mark is functional; and, in the alternative, that the Lego Mark has become generic for toy building blocks of the type sold by Best-Lock and Lego.

## PARTIES

9.   Plaintiff Best-Lock Group Limited, Hong Kong is a corporation of Hong Kong, with its principal place of business at Unit 801, 8th Floor, Pacific House, 20 Queen's Road Central, Hong Kong.

10.   Plaintiff Best-Lock Construction Toys, Inc., a subsidiary of Plaintiff Best-Lock Group Limited, Hong Kong, is a Florida corporation with its principal place of business at 444 Brickell Avenue, Suite 300, Miami, Florida 33131, and is the Best-Lock company that imports Best-Lock products, including Best-Lock toy blocks and figures, into the United States, and sells such products to distributors and customers throughout the United States, including within this judicial district.

11.   Plaintiff Best-Lock Limited, Hong Kong, a subsidiary of Plaintiff Best-Lock Group Limited, Hong Kong, is a corporation of Hong Kong, with its principal place of business at Unit 801, 8th Floor, Pacific House, 20 Queen's Road Central, Hong Kong and is the Best-Lock company that supplies Best-Lock toy blocks and figures for importation into the United States.

12.   On information and belief, Defendant Lego Juris A/S ("Lego") is a corporation incorporated under the laws of Denmark, having its principal office in Billund, Denmark.

13.   On information and belief, Lego is a holding company that owns all U.S. trademarks used in connection with the Lego brand of construction toys.

14.   On information and belief, Lego is part of a privately owned company called Lego A/S or the Lego Group.

15.   On information and belief, Lego, through its affiliated companies, Lego Systems, Inc., and/or Interlego A.G., conducts business with California customers residing in this judicial district, including but not limited to, business directly related to the alleged trademark rights at issue in this lawsuit, and its toy building block products are sold throughout the United States, including within this judicial district.

### BEST-LOCK'S BLOCKS AND FIGURES

16.   Founded in 1997, Best-Lock and its affiliates manufacture and sell throughout the world plastic toy construction interlocking blocks, block sets, and figures that come in multiple colors and that represent various themes, such as Space, Military, Police, Construction, Dinosaur, etc., that encourage healthy play and foster creativity in children.

17.   Best-Lock blocks and figures have been sold in the United States, including within this judicial district, on a regular and continuous basis since 1998 to major retail establishments which, in

turn, have offered such products to consumers in their retail stores and through their catalogs. These well-known retailers include Wal-Mart, Toys R Us, Amazon, Target and FAO Schwarz.

18.   Over the course of the past 13 years, Best-Lock's principals, affiliates, employees and distributors have worked tirelessly to develop and maintain its business of manufacturing and selling Best-Lock blocks and figures, and have over that period of time developed substantial good will in the United States and throughout the world in the "Best-Lock" name, and have expended substantial sums in advertising and in developing the products' reputation for quality and reliability at reasonable prices.

19.   Best-Lock's BEST-LOCK trademark was first registered in the United States Patent and Trademark Office ("Trademark Office") on August 17, 1999 as Registration No. 2,270,832, for toy building blocks.  Best-Lock Construction Toys, Inc. is the owner of the registered trademark BEST LOCK CONSTRUCTION TOYS (with a design component), registered September 9, 2003, as Registration No. 2,761,084 for toy building blocks and games assembled and played using toy building blocks.

20.   The basic toy building blocks and figures sold today by Best-Lock remain essentially unchanged from the toy building blocks and figures sold by Best-Lock in the United States, and within this judicial district, since the inception of its business in 1997 except for changes in some original, creative and artistic features.

/ / /

7

## LEGO'S TRADEMARK

21.     On information and belief, Lego is the owner of U.S. Trademark Registration No. 2,273,314 for the Lego Mark ("Lego Registration").

22.     The Lego Registration states that the Lego Mark "consists of a cylindrical surface feature and is not the configuration of entire product or packaging."  The Lego Registration, and Application Serial No. 75/281,464 ("Lego Application"), upon which the Lego Registration is based, and statements made during examination of the Lego Application describe the use of a repeating cylindrical stud design on the lid of a box or container and specifically acknowledge a particular round shape of those studs on a lid.

23.     On information and belief, Lego recorded the Lego Registration with CBP on September 24, 2009 for import protection in accordance with the provisions of 19 C.F.R §133.1, et seq.  A copy of the Customs Recordation, Number TMK 02-00052, is attached as Exhibit B.  On information and belief, Customs Recordation Number TMK 02-00052 forms the basis, in whole or in part, for CBP's seizures and detentions of Best-Lock's blocks and figures.

24.     Lego is unlawfully attempting to utilize its Lego Mark and Registration as a means of monopolizing the children's plastic building block business where it has previously been unable to do so by virtue of several patents for the blocks, including two issued to a principal of Lego's affiliated company, all of which have long since expired.  CBP is permitting Lego's unlawful use of the Lego Mark to be

8

perpetuated by detaining and seizing importations of Best-Lock blocks as infringing goods.

### CBP's SEIZURES

25.   Beginning on or about July 14, 2011, and continuing to date, CBP, upon information and belief at the instance of Lego, has been detaining and then seizing U.S. imports of Best-Lock blocks and figures destined for Best-Lock or Best-Lock customers in the United States, based in whole or in part upon an alleged violation of the Lego Mark in the Lego Registration.

26.   Notwithstanding the recordation of the Lego Registration with CBP on September 24, 2009, CBP did not seize any shipments of Best-Lock blocks or figures until nearly two years later.

27.   Since July 14, 2011, 14 additional shipments of Best-Lock blocks and figures have been seized and/or detained by CBP, among which were three imported by Best-Lock and the remainder imported by Best-Lock customers, all based in whole or in part on a purported infringement of the Lego Mark.

28.   The seizures of Best-Lock's blocks and figures by CBP are continuing to the current time.  Such seizures are likely to continue unless  Lego is required to consent to the importation of those products as soon as possible.

29.   CBP's seizures of only Best-Lock's blocks and figures have been arbitrary and improper.  On information and belief, CBP has not seized or detained any third party toy blocks with studs that are identical or nearly identical to Lego's stud design.

30. Best-Lock will suffer irreparable damage from the seizures for which it has no adequate remedy at law.

31. On information and belief, the retail value of the shipments described above that have been seized or detained by CBP exceed $750,000.

32. Petitions have been filed by Best-Lock and the affected Best-Lock customers with CBP demanding release of the seized shipments referred to above.

33. Since the initial detention on July 14, 2011, counsel for Best-Lock has been in contact with CBP officials in the ports of Los Angeles/Long Beach, California; San Francisco, California; Seattle, Washington; Savannah, Georgia; and Washington D.C., seeking resolution of the aforesaid seizures and detentions or a referral to the United States Attorney for the institution of forfeiture proceedings against the goods, all to no avail. It was only after CBP officially refused to release the subject merchandise following Best-Lock's attempts at an administrative solution that Best-Lock was compelled to initiate this action.

34. In a December 8, 2011 letter to Best-Lock's attorneys (Exhibit C hereto), the Customs Office in Seattle, Washington justified its seizure of Best-Lock's Blocks and Figures on the ground that "Registration Number 2273314 [the Lego Registration] protects a design mark consisting of a cylindrical surface feature of, among other products, construction toys, and is not the configuration of the entire product or packaging." The letter further states:

- Inasmuch as the products seized from Best-Lock include a cylindrical surface feature and that cylindrical surface feature is the subject of a trademark registered by LEGO that was in effect on the date of the seizure, October 27, 2011, it would appear indisputable that the products seized from Best-Lock bear a counterfeit mark.

- [T]he PTO did in fact did [sic] approve LEGO's registration of the cylindrical surface feature design mark found on the products seized from Best-Lock—having the effect of making the mark on the products seized from Best-Lock counterfeit.

35.   In the Seizure Notice dated January 6, 2012 (Exhibit D hereto), CBP repeated its claim that each of the articles in Best-Lock's Toy Building Block Sets "bears a counterfeit copy" of the Lego Mark.

36.   As a result of the foregoing seizures, of which two examples are described in Paragraphs 32 and 33 above, Best-Lock and the Best-Lock customers referenced above have been unable to obtain and sell and also to deliver customer orders for Best-Lock blocks and figures during the busiest selling season of the year at the end of 2011 and Best-Lock's selling season in the first months of 2012.   This has caused incalculable and irreparable damage to Best-Lock's business and its reputation among its customers and the consuming public who were unable to receive delivery of previously ordered Best-Lock blocks and figures during the Christmas season and who are reluctant to now order Best-Lock blocks and figures for delivery in 2012.

37.   By letter dated September 28, 2011 (Exhibit E hereto) to counsel for Lego, counsel for Best-Lock attempted to resolve the subject issues by requesting that Lego inform CBP that it should not seize and/or detain importations of Best-Lock blocks and figures for the alleged infringement of the Lego Mark.   In response (Exhibit F hereto), the attorney writing on behalf of Lego Systems, Inc. and Lego A/S, which are on information and belief, related companies to Lego, refused to consent to the importations and, on October 14, 2011, initiated a civil action in the names of Lego Systems, Inc. and Lego A/S against Best-Lock in this judicial district for copyright infringement and violation of the Connecticut Unfair Trade Practices Act, Action No. 3:11-cv-1586.   The subject of that action is not the Lego Mark implicated by this action.

38.   On information and belief, CBP has determined, and Lego agrees, that Best-Lock blocks infringe the Lego Mark as shown in the Lego Registration solely because Best-Lock's blocks contain cylindrically-shaped studs on a surface of the blocks.   Photographs of representative Best-Lock blocks are attached as Exhibit G hereto. These studs, however, are not used by Best-Lock in any way as trademarks of Best-Lock, and employ and provide no trademark or origin-designating function.   Instead, the studs are functional features of Best-Lock's blocks used for a purely functional purpose to connect blocks, figures, and other items to one another for building purposes, and for no other purpose.

/ / /

39. As a direct result of the actions of Lego in inducing CBP to seize and detain numerous shipments of Best-Lock blocks and figures, Best-Lock's business and its very viability in the American market are in imminent and substantial jeopardy.

40. The Petition for Cancellation of the Lego Registration is not likely to be decided by the Trademark Trial and Appeal Board in time to prevent additional seizures by CBP. Best-Lock will continue to suffer irreparable harm as described above until the foregoing errors and omissions are corrected. For this reason, without the grant of the relief requested in this Complaint, in particular, a mandatory Preliminary Injunction preceded by a Temporary Restraining Order, Best-Lock has no adequate remedy at law.

### FIRST CAUSE OF ACTION
### [COLLATERAL ESTOPPEL]

41. Best-Lock repeats the allegations contained in Paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. Tyco Industries, Inc. v. Lego Systems, Inc., 5 USPQ2d 1023 (D.N.J. 1987), aff'd, 853 F.2d 921 (3d Cir.), cert. den., 488 U.S. 955 (1988), held that the Lego toy block, including the stud, is functional.

43. Lego is collaterally estopped from asserting a trademark on a stud on a toy construction block because the stud is functional.

44. The stud on Lego's block cannot be a trademark. The Best-Lock stud cannot be an infringement of the alleged Lego trademark for a stud. As a consequence of the foregoing, the Best-Lock blocks do not infringe and are not counterfeit copies of the Lego Mark.

13

45.   Lego should be ordered and enjoined to file consent with CBP, pursuant to 19 U.S.C. § 1526(e), for the release of the seized and detained shipments of Best-Lock blocks and figures, and to instruct CBP that the Lego Registration and the recordation of that registration with CBP not be used to seize or detain shipments of Best-Lock blocks and figures.

46.   Best-Lock is suffering irreparable injury by reason of Lego's refusal to consent to CBP's release of Best-Lock's seized and detained blocks and figures.

47.   Best-Lock has no adequate remedy at law.

## SECOND CAUSE OF ACTION
## [DECLARATORY RELIEF OF NON-INFRINGEMENT]

48.   Best-Lock repeats the allegations contained in Paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49.   By virtue of Lego's recordation of the Lego Registration with CBP, CBP has concluded that the Best-Lock blocks that have been detained and seized violate Lego's rights in the Lego Mark because they bear a trademark that is a counterfeit of the Lego Mark.  A "counterfeit" trademark is defined in CBP's regulations as "a spurious trademark that is identical to, or substantially indistinguishable from, a registered trademark." 19 C.F.R. § 133.21(a).

50.   The cylindrical surface design of a stud that comprises the Lego Mark is a feature of the lid of its packaging, not a feature of its blocks.  During the course of the application process before the Trademark Office, Lego's predecessor, Kirkbi AG, admitted this to be so.

COMPLAINT

51.   The studs on Best-Lock's blocks and figures are not copies or counterfeits of the Lego Mark for container lid designs, the only use the Trademark Office has sanctioned for the mark in the Lego Registration.

52.   There is no claim by CBP or Lego that Best-Lock has copied, counterfeited or infringed upon the stud design of the lid of the packaging or containers for Lego products by replicating that same stud design on the lid of packaging or containers of any Best-Lock blocks, figures, or building products.

53.   The stud feature of Best-Block blocks and figures cannot, as a matter of law, function as a designation of the source or origin of the product, i.e., as a trademark, in the same way and to the precisely same extent as the stud feature of Lego's blocks cannot, as a matter of law, function as a trademark.

54.   Tyco Industries, Inc. v. Lego Systems, Inc., 5 USPQ2d 1023 (D.N.J. 1987), aff'd, 853 F.2d 921 (3d Cir.), cert. den., 488 U.S. 955 (1988), held that the Lego toy block, including the stud, is functional.  As such, the stud on Lego's block cannot be a trademark. The Best-Lock stud cannot be an infringement of a Lego trademark for a stud.

55.   Lego is collaterally estopped from asserting a trademark on a stud on a toy construction block.

56.   As a consequence of the foregoing, the Best-Lock blocks do not infringe and are not counterfeit copies of the Lego Mark.

/ / /

COMPLAINT

57.    Lego should be ordered and enjoined to file consent with CBP, pursuant to 19 U.S.C. § 1526(e), for the release of the seized and detained shipments of Best-Lock blocks and figures, and to instruct CBP that the Lego Registration and the recordation of that registration with CBP not be used to seize or detain shipments of Best-Lock blocks and figures.

58.    Best-Lock is suffering irreparable injury by reason of Lego's refusal to consent to CBP's release of Best-Lock's seized and detained blocks and figures.

59.    Best-Lock has no adequate remedy at law.

### THIRD CAUSE OF ACTION
### [DECLARATORY RELIEF OF INVALIDITY - FUNCTIONALITY]

60.    Best-Lock repeats the allegations contained in Paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61.    The stud design in the Lego Mark appearing on Lego's blocks is functional in that it enables interlocking the blocks with one another and interlocking with Lego figures and elements of those figures of Lego blocks.  As such, this stud cannot be protected as a trademark since it is a merely functional element of Lego's building blocks.

62.    Best-Lock blocks and figures employ the same functional stud concept on the blocks and figures themselves to permit the interlocking of the blocks and figures for construction play purposes, and it is only this functional feature of Best-Lock's blocks and figures that utilizes the stud design.

/ / /

16

63.   This functional feature was the subject of expired patents held by Lego's predecessor and others.  On November 25, 1940, Harry Fisher Page received United Kingdom Patent No. 529,580 for a constructional element for toy building blocks that "improved the interlocking between the assembled blocks and the stability of the built-up structure." Additional improvements to these blocks were the subjects of U.K. Patents Nos. 587,206 (issued to Mr. Page on April 17, 1947) and 633,055 (issued to Mr. Page on December 12, 1949).  These patents are referred to collectively as the "Page Patents" and are attached as Exhibit H hereto.

64.   On April 9, 1958, three years prior to the claimed first date of use for the Lego Mark, Godtfred Kirk Christiansen, the principal of Registrant's predecessor, Kirkbi AG, applied for a patent in Germany which purported to improve upon the Page Patents that showed functional studs on toy blocks.  Christiansen additionally disclosed tubes inside the toy blocks that received studs from an adjacent block to provide a more secure grip between each stud and the attached block. The German patent, No. 1,076,007, issued on February 18, 1960 and a copy is attached as Exhibit I hereto.

65.   On July 28, 1958, Mr. Christiansen applied for a U.S. patent for "toy building bricks or blocks adapted to be connected together by means of projections extending from the faces of the elements and arranged so as to engage protruding portions of an adjacent element when two such elements are assembled."  This utility patent, No. 3,005,282, was issued on October 24, 1961 and a copy is

attached as Exhibit J hereto.  This patent states in part: "This particular disposition of the secondary projections relative to the primary projections [i.e., the Lego studs] which is the essential feature of the invention provides for a vast number of possible combinations of adjacent bricks."  The patents in Paragraphs 61 and 62 of this Complaint are referred to collectively as the "Christiansen Patents".

66.  Interlego A.G. obtained patent protection for the functionality of its blocks and figures initially with U.S. Patent 4,205,482, and later with U.S. Patent 6,837,769 (respectively, Exhibits K and L hereto).  Interlego also obtained U.S. Design Patent No. D253,711 for its toy figure (Exhibit M hereto).  Each of these patents discloses and claims the functional aspects of the shapes and dimensions of Lego's toy blocks and figures. ("Lego Patents").

67.  All of the foregoing patents disclose the use of studs on the surfaces of toy building blocks and figures for the functions of attaching one block to another block and a figure to a block.

68.  On information and belief, at the time the Lego Application was executed and filed in the Trademark Office on April 25, 1997, Kirkbi was aware that toy construction blocks featuring identical or nearly identical studs on the surfaces had existed for nearly 60 years.

69.  At the time of filing the Lego Application, Kirkbi and/or Kirkbi's attorneys knew or should have known that such a stud is not a

/ / /

trademark and could not be the subject of a U.S. trademark registration.

70. On information and belief, had the Examining Attorney at the Trademark Office been made aware of the functionality of the stud on a surface of a Lego toy block and/or of the fact that the stud on the surface of a block had been patented, or that Kirkbi did indeed claim the stud on blocks as a trademark, the Examining Attorney would have refused to approve the Lego Application for registration.

71. Placing the stud on the lid of Lego's containers rather than on a surface of a toy construction block does not transform a functional stud into a source identifying feature on a container.

72. To the extent the Lego Registration is deemed to cover the stud design of Lego's building blocks, then pursuant to the provisions of 15 U.S.C. §1064(3), that registration should be invalidated and cancelled on the ground that the Lego Mark is functional for toy building blocks.

73. Lego's stud on the lid of a box or a container is also functional due to the presence of a stud on an actual lid construction marketed by or authorized by Lego, because such a stud on a container enables stacking of the containers. (Exhibit N hereto.)

74. Lego is collaterally estopped from asserting a trademark on a stud on toy construction block or on a container.

75. As a consequence of the foregoing, the Best-Lock blocks do not infringe and are not counterfeit copies of the Lego Mark.

/ / /

19

COMPLAINT

76. CBP has acknowledged the functionality of studs on toy blocks by the statement in the December 8, 2011 letter from the CBP office in Seattle: "In addition, Best-Lock product packaging states that its product 'works with other brands,' suggesting a compatibility with other brands of construction bricks that would not be possible but for the cylindrical surface feature of the bricks." Notwithstanding this recognition of the studs' functionality on toy blocks, Lego has refused to correct CBP's erroneous interpretation of the Lego Registration or to inform CBP that the stud is functional, or to tell CBP that Lego consents to release of the Best-Lock blocks.

77. Lego should be ordered and enjoined to file consent with CBP, pursuant to 19 U.S.C. § 1526(e), for the release of the seized and detained shipments of Best-Lock blocks and figures, and ordered and enjoined to instruct CBP that the Lego Registration and the recordation of that registration with CBP not be used to seize or detain shipments of Best-Lock blocks and figures.

78. Best-Lock is suffering irreparable injury by reason of the continued validity of the Lego Registration.

79. Best-Lock has no adequate remedy at law.

### FOURTH CAUSE OF ACTION
### [DECLARATORY RELIEF OF INVALIDITY - GENERICNESS]

80. Best-Lock repeats the allegations contained in Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81. On information and belief, Best-Lock's blocks and figures, Lego's blocks and figures, and other competitors' toy blocks and figures, all with identical or nearly identical functional studs, and

all blocks and figures that are interchangeable with Lego's blocks and figures, have for years been displayed at the same locations in many retail stores, advertised in the same publications and in on-line advertisements at the same time, and have been the subjects of news stories and other published articles.

82. On information and belief, third party manufacturers and sellers of toy blocks and figures with identical or nearly identical functional studs that are interchangeable with Lego's blocks and figures include Hasbro (Kre'O), Mega Bloks, K'nex, Construblock, CP Toys, Cobi S.A., Oxford (Korea), CrazyArt Construction Toys, Meccano, Woma Toys (Hong Kong), Longoon Animation & Toys Industry Co. (China), Cheng Lee Plastic Toys Co., Ltd. (China), Funmark Toys Industrial Limited, Banbao (China) and Ministeck GmbH (Germany).

83. On information and belief, Lego has known of the third party uses and Best-Lock's uses of identical or nearly identical studs on toy blocks and figures for many years and had not objected to such uses.

84. The Lego Mark has become generic by virtue of the long, continuous and extensive non-trademark functional uses in the United States by Best-Lock and other competitors of Lego of identical or nearly identical studs on millions of toy blocks and figures, including many that are interchangeable with Lego's blocks and figures.

85. Until the CBP seizure on July 14, 2011, 13 years after Best-Lock's introduction of blocks with studs into the United States,

Lego had not objected to Best-Lock's open and notorious use of functional studs on the Best-Lock blocks and figures.

86.   On information and belief, the Lego Mark represented by the Lego Registration, if ever valid, has become generic for or is synonymous with the general class of interlocking building blocks because Lego has allowed, and continues to allow, numerous competitors to use the same or substantially similar products having studs that are not the configuration of the entire product or packaging.   Best-Lock cannot infringe a mark that has become generic.

87.   To the extent the Lego Registration is deemed to cover the stud design of Lego's building blocks, then pursuant to the provisions of 15 U.S.C. §1064(3), that registration should be invalidated and cancelled on the ground that the Lego Mark has become generic for toy building blocks.

88.   Lego should thereupon be ordered to file consent with CBP, pursuant to 19 U.S.C. § 1526(e), for the release of the seized and detained shipments of Best-Lock blocks and figures, and to instruct CBP that the Lego Registration and the recordation of that registration with CBP not be used to seize or detain shipments of Best-Lock blocks and figures.

89.   Best-Lock is suffering irreparable injury by reason of the continued enforcement of the Lego Mark despite the invalidity of the Lego Registration.

90.   Best-Lock has no adequate remedy at law.

/ / /

COMPLAINT

### FIFTH CAUSE OF ACTION
### [LEGO IS EQUITABLY ESTOPPED FROM ENFORCING THE LEGO MARK AND REGISTRATION]

91.  Best-Lock repeats the allegations contained in Paragraphs 1 through 90 of this Complaint as though fully set forth herein.

92.  For the past 13 years, Best-Lock has continuously imported its blocks and figures into the United States.  These products have enjoyed tremendous success in the U.S., totaling millions of dollars in sales.

93.  Since the introduction of Best-Lock blocks and figures into the U.S., Best-Lock has widely promoted and marketed its blocks and figures through catalogs, advertisements in trade journals, newspapers, magazines and other consumer publications, and its web site (www.best-lock.com) (Exhibit O hereto), as well as in cooperative advertising (paid jointly by the advertiser and by the retailer of the goods) which often simultaneously featured both Best-Lock's and Lego's blocks and figures, (Exhibit P hereto).

94.  During these 13 years, Best-Lock's blocks and figures have been sold to the same customers in the same departments or locations in the same thousands of United States retail stores for the same purposes as Lego's blocks and figures, and have been advertised in the same store publications at the same time as Lego's blocks and figures.

95.  On information and belief, Lego has known about Best-Lock's blocks and figures for about 13 years.  Yet until the July 14, 2011 seizure of Best-Lock's blocks and figures by CBP, Lego had never attempted to stop Best-Lock's sale of such products in the U.S. and

23

had never issued any warning or given Best-Lock any notice that Lego believed that Best-Lock's blocks and/or figures infringed any trademark owned by Lego.

96.   Toy blocks and figures identical to or similar to Lego's and Best-Lock's blocks and figures with interchangeable features, originating from numerous unrelated sources, have been competing for years in the U.S. market.  Best-Lock, therefore, had an entirely reasonable basis to believe that Lego would never assert a claim against toys that Best-Lock and others had been selling continuously for more than 13 years.

97.   Best-Lock reasonably relied on Lego's failure to act for 13 years by increasing its sales and advertising efforts for its blocks and figures in the United States, by promoting the well known interchangeability of the Best-Lock blocks and figures with Lego's blocks and figures, by increasing its retailer customer base in the United States, by investing more in the United States related to its blocks and figures, and in other ways.

98.   In further reliance on Lego's failure to act in the United States against Best-Lock's blocks and figures for 13 years, Best-Lock obtained orders for delivery in 2011, including for the Christmas season, of the same blocks and figures to which Lego had never made an objection.

99.   Lego is unjustifiably using an isolated and improper seizure by CBP to assert rights that, if they had ever existed, were abandoned by Lego years ago.

100. Lego's delay in asserting its alleged rights against Best-Lock for 13 years, with full knowledge of Best-Lock's blocks and figures during that entire time, is unreasonable and inexcusable.

101. The Lego Mark and the Lego Registration are unenforceable against Best-Lock.

102. Best-Lock is being severely damaged now on account of its reasonable reliance on Lego's prolonged inaction against Best-Lock. Best-Lock is at imminent risk of losing its ability to now and in the future deliver to its U.S. customers the same Best-Lock blocks and figures for which Lego had voiced no legal objection for 13 years.

103. Best-Lock has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
### [FRAUD]

**Fraud in the Application**

104. Best-Lock repeats the allegations contained in Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

105. On information and belief, the Lego Registration was fraudulently obtained and has been fraudulently maintained by Lego.

106. At the time the Lego Application (Exhibit Q hereto) was executed and filed in the U.S. Patent and Trademark Office, Lego's predecessor Kirkbi was aware that the Lego Mark was a functional and/or generic stud that was not entitled to trademark protection in connection with its product containers.

107. Kirkbi, in executing and filing the Lego Application in the Trademark Office, falsely claimed with intent to deceive the Trademark Office that the Lego Mark was not functional.